U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 FEB 21 AM 10: 28

CLERK

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ITHERM TECHNOLOGIES, L.P.,
    Plaintiff,

v.

CASE NO. 2:20-cv-24

HIGH FREQUENCY POWER, LLC,
DYNAPOWER COMPANY, LLC, and
PETER POLLACK,
    Defendants.

## VERIFIED COMPLAINT

Plaintiff ITherm Technologies, L.P., makes the following Complaint against the above-named Defendants:

## PARTIES

1. Plaintiff ITherm Technologies L.P. ("ITherm LP") is a Delaware limited partnership. Its General Partner is iTherm Technologies, LLC ("iTherm LLC"), a Delaware limited liability company. The Manager of iTherm LLC is Wayne Collette, an adult resident of the State of New Hampshire.

2. Defendant High Frequency Power, LLC ("HFP") is a Vermont limited liability company with its principal place of business at 85 Meadowland Drive, South Burlington, Vermont.

3. Defendant Dynapower Company, LLC is a Vermont limited liability company with its principal place of business at 85 Meadowland Drive, South Burlington, Vermont.

4. Defendant Peter Pollack is an adult resident of the State of Vermont.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000.00 and is between citizens of different states.

1

6. Venue is proper in this Court, as the events and transactions at issue took place and plaintiff's principal residence is located within this judicial district.

**FACTS**

7. ITherm LP and HFP entered into an Intellectual Property Asset Purchase Agreement ("APA") on September 10, 2010, whereby ITherm LP, as "Seller," sold, and HFP, as "Purchaser," purchased, "certain operating assets of Seller (hereinafter 'IP Assets')," consisting of "(i) the name of Seller and associated goodwill (including all customer and prospect lists and information, correspondence with customers and prospects, proposals and contacts, phone number(s) and website); (ii) all patents, patent applications, and patent rights held by Seller . . . (the 'Patent Assets'), and all continuations, provisionals, reissues, reexamination applications, and foreign counterparts of any of the Patent Assets; (iii) all notes, documentation and files . . . pertaining to the Patent Assets; (iv) all notes, documentation, and files . . . pertaining to any and all expired patents that are not part of the Patent Assets; (v) all other intellectual property . . . ; (vi) tangible personal property . . . ; and (vii) the existing contracts listed on Schedule 1(a)(vii) . . . (the 'Contracts')." (APA ¶ 1.a).

8. In the course of negotiating the APA, Defendant Pollack disclosed his own valuation of the IP Assets, which was $7.5 million.

9. Pursuant to the APA ¶ 1.c, HFP agreed to pay to ITherm LP certain Earn Out Payments, including: "i. Initial Earn Out Payments for a period commencing May 1, 2010 and ending December 31, 2019, equal to 25% of EBITDA (defined below)[1] of the business of Purchaser consisting of the development and sale of products using the Patent Assets (the 'Business'), up to an aggregate maximum amount of Two Million Dollars (the 'Initial Aggregate Amount');" and "ii.

---

[1] The APA defined EBITDA as "with respect to any fiscal period, the net earnings (or loss) before interest expense, taxes, depreciation, and amortization for such fiscal period, all as determined in accordance with consistently applied generally accepted accounting principles." (APA, ¶ 1(h)).

2

Additional Earn Out Payments for a period of 3 years or 3 years plus the balance of the initial period of initial Earn Out Payments if those initial Earn Out Payments cease due to reaching the Initial Aggregate Amount (e.g., if Initial Earn Out Payments aggregate $2 million in at the end of year 7, additional Earn Out Payments would then extend for a period of 6 years), equal to 10% of EBITDA of the Business, without any aggregate limit."(APA ¶ 1.c).

10. Pursuant to the APA, HFP agreed to "annually provide audited financial statements from Purchaser's independent accountants for the preceding calendar year," to be "completed and delivered to Seller within one hundred eighty (180) calendar days after the end of such calendar year," and ITherm LP was entitled to an "annual right to review Purchaser's books and records as they pertain to EBITDA in order to evaluate the accuracy of Earn Out Payments made by Purchaser," and to "cause Purchaser's books and records as they pertain to EBITDA to be audited by a certified public accounting firm of Seller's choosing in order to evaluate the accuracy of Earn Out Payments made by Purchaser." (APA ¶ 1.e).

11. Pursuant to the APA ¶ 1.c, Earn Out Payments "accrued in each calendar year (the first such year being May 1-December 31) shall be made annually within thirty (30) days of the Purchaser's receipt of audited financial statements from the Purchaser's independent certified public accountants for the preceding calendar year, as further set forth in Section 1(e)," and "shall be accompanied by a certified written statement from Purchaser setting forth all information and calculations upon which the amount of such Earn Out Payment was based."

12. Pursuant to the APA ¶ 1.h, HFP "shall not, unless required by generally accepted accounting principles or upon the consent of Seller, pay any management fee to or engage in any other non-arm's length transactions with any person or entity affiliated with Purchaser or otherwise make accounting changes that are intended to or are otherwise reasonably likely to artificially

3

reduce the EBITDA of the Business. If the Purchaser initiates any such material changes or payments, such changes or payments, unless required by generally accepted accounting principles, shall be disregarded when calculating the EBITA for the Business."

13. Pursuant to the APA ¶ 1.k, in the event HFP determines that "the return on investment does not justify continuation of the Business or any further use of the IP Assets and/or any attempt to sell the assets of the Business or the Business to any third party," then HFP must "so notify Seller in writing and Seller shall have the option, at its expense and within ninety (90) days of such notice, of recovering all of Purchaser's remaining right, title and interest in and to the IP Assets, without payment of additional consideration to" HFP.

14. HFP has never notified ITherm LLP that the return on investment does not justify continuation of the Business or further use of the IP Assets and/or any attempt to sell the assets of the Business or the Business to any third party.

15. At all relevant times, the IP Assets have continued to be used, marketed and sold, and the Business has continued to operate.

16. Defendant Pollack caused HFP to sell, transfer and/or assign the Business and/or the IP Assets to Dynapower, and subsequently caused Dynapower to be sold to Pfingsten Partners, LLC.

17. Pursuant to the APA ¶ 1.i, "[u]pon the occurrence of a Transfer Event (defined below), Purchaser shall be entitled to satisfy the Purchase Price by way of payment/delivery to Seller of twenty-five percent (25%) of the U.S. dollar value . . . of all net . . . consideration paid and or given by the purchaser/merging party, up to an aggregate value . . . of Two Million Dollars ($2,000,000), less all Earn Out Payments previously paid to Seller. . . . A 'Transfer Event' means any one of the following: (i) the sale, assignment, or other transfer of substantially all of the assets

4

of the Purchaser outside the ordinary course of business in one or a series of transactions; (ii) Peter Pollack's transfer of more than 49% of the management, voting, or economic interests of the Purchaser, in one or a series of transactions, and (iii) the merger or consolidation of the Purchaser with or into any other entity."

18. On information and belief, Defendant Pollack has caused HFP to engage in Transfer Events without payment/delivery to Seller of twenty-five percent (25%) of the net consideration paid and/or given by the purchaser/merging party.

19. On information and belief, Defendant Pollack has caused HFP to engage in non-arms' length transactions and has otherwise made accounting changes that were intended and/or reasonably likely to artificially reduce the EBITDA of the Business.

20. Pursuant to the APA ¶ 8.d, "[t]his Agreement shall not be assigned by the Purchaser without the prior written consent of the Seller, provided that Purchaser may freely assign this Agreement to any entity in which Peter Pollack holds a majority ownership interest."

21. On information and belief, Defendant Pollack has caused HFP to effectively assign the APA without the prior written consent of ITherm LP.

[redacted]

23. Defendants have failed and refused to annually provide audited financial statements for the calendar years 2012, 2013, 2014, 2015, 2016, 2017 and 2018, despite repeated demands.

5

24. On October 3, 2019, Plaintiff's counsel asked Defendants HFP and Pollack to provide the missing audited financial statements and to permit Plaintiff to review the books and records on October 17, 2019. Plaintiff's counsel also demanded that HFP "take all steps necessary to assure that all documents and records, including electronically stored information within HFP's possession, custody or control, which refer or relate in any way to HFP's operations and financial affairs for the period 2010 through the present, and continuing, are preserved and protected against intentional or unintentional loss, alteration or destruction."

25. On October 15, 2019, HFP's registered agent confirmed receipt of this request and promised to "check with Peter Pollack and I will be back in touch."

26. On October 16, 2019, Defendants' counsel advised that "we aren't going to be ready to get you what you are looking for by the 17th," and that "Peter Pollack has previously scheduled travel which is going to delay the matter," and asked, "Can we agree to December 17 for the examination? Once we have an agreed date, I am sure we can find an appropriate place."

27. On October 17, 2019, Defendants' counsel confirmed that HFP was complying with Plaintiff's preservation demand.

28. On October 17, 2019, Plaintiff's counsel responded, "December 17th works for us. Please advise as to location. Please also note that we have requested audited financial statements which are required by the Asset Purchase Agreement, but have not been provided for multiple years. Please provide those without further delay." Defendants' counsel responded, "I'll be in touch with you about location as we near the date. I don't have the statements now, but anticipate we'll be providing those on the 17th as well."

29. On December 10, 2019, Plaintiff's counsel wrote to Defendants' counsel: "Please confirm the location for the records review next Tuesday, December 17th. Please provide the

6

audited financial statements in advance of the record review. Per the contract, these were to have been provided annually as a matter of course without a request."

30. On December 17, 2019, Defendants' counsel sent Plaintiff's counsel copies of unaudited, reviewed financial statements as of December 31, 2011, 2012, 2013, and 2014 (which Plaintiff already had), and offered to "discuss with you production and inspection of the remaining documents."

[REDACTED]

32. Defendants have failed and refused to permit Plaintiff to review Purchaser's books and records, despite repeated demands.

33. Based on Defendants' conduct, Plaintiff has now concluded that Defendants' failure to provide annual audited financial statements was intentional and not inadvertent or careless, and that Defendants either never intended to comply with their contractual undertakings, and/or at some point after executing the APA formed an intention not to comply and to conceal that intention from Plaintiff.

34. Defendants have subjected Plaintiff to a continual, cumulative pattern of tortious conduct, which continues through the present date, and has not yet ceased.

35. Defendant Pollack has controlled HFP and Dynapower and used their corporate identities to perpetrate a fraud on Plaintiff, such that the corporate forms of HFP and Dynapower

7

should be disregarded for purposes of this action, and the Defendants should be treated as a single, unitary entity, or as alter egos of each other.

36. As a direct and proximate consequence of Defendants' conduct, Plaintiff has sustained and continues to sustain losses and injuries for which Plaintiff is entitled to recover money damages, including lost Earn Out payments and/or lost profits, as well as consequential and incidental losses and expenses.

37. As a direct and proximate consequence of Defendants' conduct, Plaintiff has been and continues to be irreparably harmed in a manner and to an extent that cannot be fully or adequately redressed by money damages.

38. Defendants' conduct was wanton, willful, and outrageous, and reflects malice and/or a reckless disregard for Plaintiff's rights and interests, such that an award of punitive damages is appropriate.

## COUNT ONE

39. The foregoing paragraphs are incorporated by reference.

40. Defendant HFP has breached and continues to breach the express terms of the APA.

41. Defendants HFP and Pollack have breached their implied contractual obligations of good faith and fair dealing.

## COUNT TWO

42. The foregoing paragraphs are incorporated by reference.

43. Defendants have provided false and misleading financial statements to the Plaintiff and continue to conceal and/or fail to disclose material facts from Plaintiff, including EBITDA, assignments, Transfer Events, non-arms' length transactions, and/or accounting changes that were and are intended and/or reasonably likely to artificially reduce the EBITDA of the Business.

44. Defendants have intentionally concealed from Plaintiff their violations of the APA.

45. Defendants have acted willfully and with an intent to deceive Plaintiff.

46. In the alternative, Defendants have negligently failed to disclose material information to Plaintiff which they knew or should have known was necessary to disclose, in order to render their express representations not misleading and to prevent Plaintiff from continuing to rely upon Defendants' express representations, to Plaintiff's detriment.

## COUNT THREE

47. The foregoing paragraphs are incorporated by reference.

48. Any transfers of the IP Assets subsequent to the effective date of the APA were made with the actual intent to hinder, delay or defraud Plaintiff, and are therefore fraudulent as to Plaintiff pursuant to 9.V.S.A. §§ 2288 and 2289.

## COUNT FOUR

49. The foregoing paragraphs are incorporated by reference.

50. Defendants entered into a special relationship with Plaintiff whereby Plaintiff necessarily placed its trust and confidence in Defendant to protect Plaintiff's continuing interests in the IP Assets after entering into the APA, and thereby owed and continue to owe fiduciary duties to Plaintiff.

51. Defendants have breached and continue to breach their fiduciary duties to Plaintiff.

## COUNT FIVE

52. The foregoing paragraphs are incorporated by reference.

53. Defendants have conspired and agreed with each other and with third parties yet to be identified to devise and implement the fraudulent scheme described above, and have acted, separately and in concert with each other, in furtherance of their conspiracy.

**WHEREFORE**, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally, together with an award of monetary and punitive damages in amounts to be determined by the jury, and an Order providing for the following preliminary and/or permanent equitable relief:

(1) avoidance of any transfer or obligation undertaken by Defendants respecting the IP Assets, to the extent necessary to satisfy Plaintiff's claims;

(2) disregarding the corporate forms of HFP and Dynapower for purposes of this action, and treating the Defendants as a single, unitary entity, or as alter egos of each other;

(3) an attachment or other provisional remedy against the asset transferred or other property of the transferee;

(4) subject to applicable principles of equity:

   (A) an injunction against further disposition by Defendants or their transferees, or both, of the IP Assets, and freezing Defendants' accounts and assets *pendente lite*;

   (B) appointment of a receiver to take charge of the IP Assets, including any asset transferred or of other property of the transferee;

   (C) an accounting;

   (D) any other relief the circumstances may require.

## JURY DEMAND

Plaintiff requests a jury on all claims.

DATED at Burlington, Vermont this 21ˢᵗ day of February, 2020.

BY: PAUL FRANK + COLLINS P.C.

BY: _____
Stephen D. Ellis
P.O. Box 1307
Burlington, Vermont 05401
802-658-2311
sellis@pfclaw.com
Attorney for Plaintiff

7785409_2:09541-00002

11

## VERIFICATION PURSUANT TO 28 U.S.C. §1746

I, Wayne Collette, in my capacity as Manager of iTherm Technologies LLC, the general partner of ITherm Technologies, L.P., certify under penalties of perjury that I have read the Verified Complaint and the allegations contained herein are true and, with respect to the allegations made on information and belief that such allegations are true to the best of my knowledge and belief.

Executed at Burlington, Vermont on the 18th day of February, 2020.

_____
Wayne Collette
Manager, iTherm Technologies LLC