UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ITHERM TECHNOLOGIES, L.P.,
Plaintiff,

v.

HIGH FREQUENCY POWER, LLC,

Defendant.

CASE NO. 2-20-CV-24

## AMENDED COMPLAINT

Plaintiff ITherm Technologies, L.P., makes the following Complaint against the above-named Defendant:

### PARTIES

1. Plaintiff ITherm Technologies L.P. ("ITherm LP") is a Delaware limited partnership. Its General Partner is iTherm Technologies, LLC ("iTherm LLC"), a Delaware limited liability company. The Manager of iTherm LLC is Wayne Collette, an adult resident of the State of New Hampshire.

2. Defendant High Frequency Power, LLC ("HFP") is a Vermont limited liability company with its principal place of business at 85 Meadowland Drive, South Burlington, Vermont.

### JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000.00 and is between citizens of different states.

4. Venue is proper in this Court, as the events and transactions at issue took place and plaintiff's principal residence is located within this judicial district.

1

## FACTS

5.      ITherm LP and HFP entered into an Intellectual Property Asset Purchase Agreement ("APA") on September 10, 2010, whereby ITherm LP, as "Seller," sold, and HFP, as "Purchaser," purchased, "certain operating assets of Seller (hereinafter 'IP Assets')," consisting of "(i) the name of Seller and associated goodwill (including all customer and prospect lists and information, correspondence with customers and prospects, proposals and contacts, phone number(s) and website); (ii) all patents, patent applications, and patent rights held by Seller . . . (the 'Patent Assets'), and all continuations, provisionals, reissues, reexamination applications, and foreign counterparts of any of the Patent Assets; (iii) all notes, documentation and files . . . pertaining to the Patent Assets; (iv) all notes, documentation, and files . . . pertaining to any and all expired patents that are not part of the Patent Assets; (v) all other intellectual property . . . ; (vi) tangible personal property . . . ; and (vii) the existing contracts listed on Schedule 1(a)(vii) . . . (the 'Contracts')." (APA ¶ 1.a).

6.      Pursuant to the APA ¶ 1.c, HFP agreed to pay to ITherm LP certain Earn Out Payments, including: "i. Initial Earn Out Payments for a period commencing May 1, 2010 and ending December 31, 2019, equal to 25% of EBITDA (defined below)[1] of the business of Purchaser consisting of the development and sale of products using the Patent Assets (the 'Business'), up to an aggregate maximum amount of Two Million Dollars (the 'Initial Aggregate Amount');" and "ii. Additional Earn Out Payments for a period of 3 years or 3 years plus the balance of the initial period of initial Earn Out Payments if those initial Earn Out Payments cease due to reaching the Initial Aggregate Amount (e.g., if Initial Earn Out Payments aggregate $2 million in at the end of

---

[1] The APA defined EBITDA as "with respect to any fiscal period, the net earnings (or loss) before interest expense, taxes, depreciation, and amortization for such fiscal period, all as determined in accordance with consistently applied generally accepted accounting principles." (APA, ¶ 1(h)).

2

year 7, additional Earn Out Payments would then extend for a period of 6 years), equal to 10% of EBITDA of the Business, without any aggregate limit."(APA ¶ 1.c).

7. Pursuant to the APA, HFP agreed to "annually provide audited financial statements from Purchaser's independent accountants for the preceding calendar year," to be "completed and delivered to Seller within one hundred eighty (180) calendar days after the end of such calendar year," and ITherm LP was entitled to an "annual right to review Purchaser's books and records as they pertain to EBITDA in order to evaluate the accuracy of Earn Out Payments made by Purchaser," and to "cause Purchaser's books and records as they pertain to EBITDA to be audited by a certified public accounting firm of Seller's choosing in order to evaluate the accuracy of Earn Out Payments made by Purchaser." (APA ¶ 1.e).

8. Pursuant to the APA ¶ 1.c, Earn Out Payments "accrued in each calendar year (the first such year being May 1-December 31) shall be made annually within thirty (30) days of the Purchaser's receipt of audited financial statements from the Purchaser's independent certified public accountants for the preceding calendar year, as further set forth in Section 1(e)," and "shall be accompanied by a certified written statement from Purchaser setting forth all information and calculations upon which the amount of such Earn Out Payment was based."

9. Pursuant to the APA ¶ 1.h, HFP "shall not, unless required by generally accepted accounting principles or upon the consent of Seller, pay any management fee to or engage in any other non-arm's length transactions with any person or entity affiliated with Purchaser or otherwise make accounting changes that are intended to or are otherwise reasonably likely to artificially reduce the EBITDA of the Business. If the Purchaser initiates any such material changes or payments, such changes or payments, unless required by generally accepted accounting principles, shall be disregarded when calculating the EBITA for the Business."

3

10. Pursuant to the APA ¶ 1.k, in the event HFP determines that "the return on investment does not justify continuation of the Business or any further use of the IP Assets and/or any attempt to sell the assets of the Business or the Business to any third party," then HFP must "so notify Seller in writing and Seller shall have the option, at its expense and within ninety (90) days of such notice, of recovering all of Purchaser's remaining right, title and interest in and to the IP Assets, without payment of additional consideration to" HFP.

11. HFP has never notified ITherm LLP that the return on investment does not justify continuation of the Business or further use of the IP Assets and/or any attempt to sell the assets of the Business or the Business to any third party.

12. At all relevant times, the IP Assets have continued to be used, marketed and sold, and the Business has continued to operate.

13. HFP has failed and refused to annually provide audited financial statements for the calendar years 2012, 2013, 2014, 2015, 2016, 2017 and 2018, despite repeated demands.

14. HFP has failed and refused to make Earn Out Payments to ITherm LLP, as required by the APA.

15. Defendant HFP concealed from Plaintiff and failed to disclose to Plaintiff that the ITherm Business generated EBITDA in multiple fiscal periods for which Earn Out Payments were and remain due and payable, and would never have disclosed this information had Plaintiff not filed this lawsuit.

16. Defendant HFP engaged in non-arm's length transactions with affiliated entities and made accounting changes not required by consistently applied generally accepted accounting principles, which are intended to and/or are otherwise reasonably likely to artificially reduce the EBITDA of the Business for multiple fiscal periods.

4

## COUNT ONE

17. The foregoing paragraphs are incorporated by reference.

18. HFP has breached and continues to breach the express terms of the APA.

19. HFP has breached the implied contractual obligation of good faith and fair dealing.

20. As a direct and proximate consequence of HFP's conduct, ITherm LLP has sustained and continues to sustain losses and injuries for which ITherm LLP is entitled to recover money damages, including lost Earn Out payments and/or lost profits, as well as consequential and incidental losses and expenses.

21. As a direct and proximate consequence of HFP's conduct, ITherm LLP has been and continues to be irreparably harmed in a manner and to an extent that cannot be fully or adequately redressed by money damages.

22. HFP's conduct was wanton, willful, and outrageous, and reflects malice and/or a reckless disregard for ITherm LLP's rights and interests, such that an award of punitive damages is appropriate.

**WHEREFORE**, Plaintiff demands judgment in its favor and against the Defendant, together with an award of monetary and punitive damages in amounts to be determined by the jury, plus interest and costs, and any other relief the circumstances may require.

## JURY DEMAND

Plaintiff requests a jury on all claims.

DATED at Burlington, Vermont this 16th day of April, 2020.

BY:  PAUL FRANK + COLLINS P.C.

BY:  _____
Stephen D. Ellis
P.O. Box 1307
Burlington, Vermont 05401
802-658-2311
sellis@pfclaw.com
Attorney for Plaintiff

7877067_4:09541-00002

6